UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE APPLICATION OF
Clarice Oliveira Tavares

For an Order Pursuant to 28 U.S.C. § 1782 to
Conduct Discovery for Use in Foreign Proceedings

Case No. _____

**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Clarice Oliveira Tavares (the "Applicant") respectfully submits this Application for judicial assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary and testimonial evidence for use in foreign proceedings ("Application"). The Applicant seeks evidence from certain business entities residing or found in this District. In support, the Applicant states as follows:

1. The facts relevant to this Application are set forth below and in the sworn Declaration of Maximiliano N. D'Auro ("D'Auro Declaration"), attached as **Exhibit A**.

2. The Applicant seeks assistance from the United States District Court in and for the Southern District of Florida to obtain documentary and testimonial evidence four (4) business entities residing or found in this District. See D'Auro Declaration ¶¶ 3, 17, 19, 20 and 22.

3. This evidence is for use in a divorce proceeding, described more fully below, to be filed imminently in the courts of Argentina. See D'Auro Declaration ¶¶ 3, 4.

4. The Applicant seeks this assistance in her capacity as putative petitioner and party-litigant in the contemplated Argentine divorce proceeding. See D'Auro Declaration ¶ 4.

1

## **FACTUAL BACKGROUND**

5.  The Applicant has been married (and continues to be married) to Eduardo F. Costantini (the "Husband") since 2006. Although they had no children together, both of them have children from prior marriages. See D'Auro Declaration ¶ 5.

6.  Since their marriage, the Applicant and Husband have lived together in Buenos Aires, Argentina. In the year 2014, they began to plan for a move to the United States, and specifically to New York City. In furtherance of that plan, they rented and furnished an apartment in New York City, with the intention to live there together with Applicant's daughter. Soon after completing the move and preparing everything for their common life there, Husband abruptly changed his mind, and communicated to the Applicant, via telephone and email, his decision to divorce from her and stay in Argentina. Since then, the marriage has become irretrievably broken. See D'Auro Declaration ¶ 6.

7.  Following the Husband's announcement, Applicant and Husband began negotiating the termination of their marriage and, among other issues, the distribution of marital property (the "Negotiation"). Recently, the Negotiation has failed, thus making imminent the divorce petition and filings by the Applicant. See D'Auro Declaration ¶ 7.

8.  Husband is a well-known real estate businessman in Argentina. He founded and is currently the main shareholder of Consultatio S.A., one of the largest real estate development companies in Argentina. The following biographical details are posted at Consultatio S.A.'s website[1]:

> Eduardo F. Costantini was born in Buenos Aires, where he studied Economics. He earned his MA in Economics at The University of East Anglia in England. In 1975 he founded the brokerage

---

[1] http://www.consultatio.com.ar/en/the-company/who-we-are/.

> Consultatio Bursatil, which he re-founded in 1991 as Consultatio Asset Management, that same year he was designated Vice President of the Banco Frances del Rio de la Plata. Then he proceeded to deal in Real Estate and has since been responsible for the development of the most renowned enterprises in Argentina, among them Nordelta and construction of the two office towers in Catalinas Norte. Costantini is also a great collector of art (an art collector). In 1995, he created the Eduardo F. Costantini Foundation which he still presides. In 2001, he opened the Malba - Costantini Collection, Museum of Latin American Art of Buenos Aires, a nonprofit cultural institution which exhibits its own art collection. He is also a member of the Advisory Board of the Museum of Modern Art (MoMA) in New York.

See D'Auro Declaration ¶ 8 and Exhibit 1 thereto.

9. Consultatio S.A. was formed in 1981 and became a publicly-listed company (Quote: CTIO, Buenos Aires Stock Exchange) after its IPO in 2008. Currently, Consultatio S.A.'s shares are owned by Husband (71.7%), ANSES (24.9%), and other individual owners (3.4%).[2] ANSES is the Argentine Social Security Administration. See D'Auro Declaration ¶ 9.

10. Husband is the chairman of Consultatio S.A. Furthermore, and notwithstanding the referred IPO and the existence of other shareholders, he is regarded as the driving force and central figure behind the company to the extent that the IPO's prospectus states:

> Consultatio was formed in 1981 and it was used by Mr. Constantini as its investment vehicle for nearly 20 years. On September 28, 2007, the Company performed a corporate reorganization to concentrate a vast majority of Mr. Constantini's real estate transactions in Consultatio [free translation, page 6 of the Consultatio's IPO prospectus] … The success of the Company depends on the continuity of the involvement of Mr. Constantini (its main shareholder, executive director and chairman of the board) who has great experience and broad knowledge about the business and the Company's industry. The loss or interruption of his services for any reason may have a material adverse effect on the Company's business. [Free translation, page 42 of the Consultatio's IPO prospectus].

---

[2] All of these figures are included in Consultatio S.A.'s corporate presentation (as of February, 2015) as posted in Consultatio's website.

See D'Auro Declaration ¶ 10.

11. In 2009, Consultatio S.A. as well as Husband (through other companies different from Consultatio S.A.) began investing in the United States, specifically in the greater Miami area. As a consequence, under the trademark Consultatio, the projects named "Oceana Key Biscayne" and "Oceana Bal Harbour" (the "US Projects") are currently being developed and marketed. See D'Auro Declaration ¶ 11.

12. Both projects are premium residential buildings, developed through two companies: Consultatio Key Biscayne LLC and Consultatio Bal Harbour LLC. These two companies are controlled by Consultatio Real Estate Inc. All three companies were established in Florida. In turn, Consultatio Real Estate Inc. is owned both by Consultatio S.A. (55.1%) and Husband (44.9%), the latter through two Uruguayan companies wholly owned by him: Paldemar S.A. and Aniter S.A. See D'Auro Declaration ¶ 12. See also corporate chart attached to the D'Auro Declaration as Exhibit 2 at page 5 thereto.

13. Consultatio S.A.'s most recent financial statements (i.e. closing on December 31, 2014) state:

> On June 11, 2012, Consultatio Real Estate, Inc. increased its corporate capital, which was entirely subscribed by a *company related to Consultatio S.A.* As a consequence of this transaction, Consultatio S.A.'s participation in Consultatio Real Estate Inc. was reduced to 55.1122% of the outstanding shares and votes, keeping its control. [Page 8 of 12 of Consultatio S.A.'s Board of Directors report; underlining and italics added for the purposes of the D'Auro Declaration].

See D'Auro Declaration ¶ 13 and Exhibit 3 thereto.

14. In accordance with what is mentioned in footnote (3) of the corporate chart attached as Exhibit 2 to the D'Auro Declaration, it is believed that the "company related to Consultatio S.A." is Aniter S.A., which is a wholly-owned company of Paldemar S.A., which in turn is wholly

4

(and personally) owned by Husband.  Both Aniter S.A. and Paldemar S.A. are Uruguayan holding companies.  See D'Auro Declaration ¶ 14.

15.     Furthermore, it is believed based on documents filed with the Florida Department of State – Division of Corporations that a company named Paldemar Realty Corp. (in which Husband is a director) was incorporated in Florida in late 2012.  Because of the fact that Paldemar Realty Corp. is a company related to Paldemar S.A., it is highly likely that Paldemar Realty Corp. is involved with the US projects as well.  See D'Auro Declaration ¶ 15 and Exhibit 4 thereto.

16.     In sum, Husband indirectly owns a majority stake in the US Projects, whether through Consultatio S.A. (55.1%) or through Paldemar S.A. and Aniter S.A. (44.9%). See D'Auro Declaration ¶ 16.

## NATURE OF EVIDENCE REQUESTED

17.     The Applicant seeks assistance from the United States District Court in and for the Southern District of Florida to obtain relevant and probative documentary and testimonial evidence from four (4) business entities (Consultatio Real Estate, Inc., Consultatio Key Biscayne LLC, Consultatio Bal Harbour LLC and Paldemar Realty Corp.) formed, residing or found in this District.  See D'Auro Declaration ¶ 17.

18.     Consultatio Real Estate Inc. is a Florida corporation doing business at 1395 Brickell Avenue, Suite 950, Miami, Florida.  See D'Auro Declaration ¶ 19.

19.     Consultatio Key Biscayne LLC and Consultatio Bal Harbour LLC are Florida limited liability companies doing business at the same address, 1395 Brickell Avenue, Suite 950, Miami, Florida.  See D'Auro Declaration ¶ 20.

20.     For its part, Paldemar Realty Corp., is a Florida corporation with registered address at 1395 Brickell Avenue, Suite 950 in Miami, Florida.  See D'Auro Declaration ¶ 22.

21. The Applicant seeks evidence relevant to the Argentine Proceeding. More specifically, evidence pertaining to the ownership of Consultatio Real Estate Inc., including the 44.9% that is not owned by Consultatio S.A.; the specific circumstances as to the date, form, funding source and payor surrounding payment for the shares issued by Consultatio Real Estate Inc. as part of the capital increase in June 2012; Husband's, Aniter S.A.'s and/or Paldemar S.A.'s relationship with the business entities involved in the US Projects; and evidence of Paldemar Realty Corp.'s assets and rights, whether owned or registered in the United States or abroad. See D'Auro Declaration ¶¶ 18, 21.

22. The evidence sought through this Application is for use in imminent, adjucative, family and civil proceedings in Argentina (the "Argentine Proceeding") which will be filed in the near term because of the recent failure of the Negotiation. The Argentine Proceeding will be heard before a Civil First Instance National Court.[3] Subject to the limitations set forth by the National Civil Procedural Code, the rulings of that court may be appealed to the Civil National Court of Appeals[4] and, eventually, to the National Supreme Court.[5] See D'Auro Declaration ¶ 23.

23. The evidence sought through this § 1782 Application is crucial, first, to allow Applicant to form a clear picture of Husband's financial structures and asset map with regards to the US Projects and to aid the Argentine tribunal's adjucative role in the Argentine Proceeding. By uncovering the flow of funds through the related companies and how Husband's interest in the US Projects was acquired, Applicant will be better placed to evidence the factors necessary to argue that the assets qualify as marital property under the Argentine rules governing the subject matter. See D'Auro Declaration ¶ 24.

---

[3] Juzgado Nacional de Primera Instancia en lo Civil.
[4] Camara Nacional de Apelaciones en lo Civil.
[5] Corte Suprema de Justicia de la Nacion.

24. In that sense, the main issue of contention in the Negotiation (which will be adjudicated in the Argentine Proceeding) is whether the 44.9% stake of the US Projects that Husband owns through Paldemar S.A. and Aniter S.A. should be deemed as marital property or not. Husband denies that this property is marital property and Applicant has no way, other than through this Application, to confirm Husband's contentions. See D'Auro Declaration ¶ 25.

25. Under Argentine law, any asset acquired by either or both spouses during the marriage by any reason other than inheritance, gift or bequest is deemed to be marital property. Codigo Civil [Civil Code] art. 1272 (Arg.). See D'Auro Declaration ¶ 26.

26. Husband claims that because Paldemar S.A. was acquired/incorporated by Husband before the marriage (in 2002), any assets directly or indirectly owned by Paldemar S.A. should not be deemed as marital property. See D'Auro Declaration ¶ 27.

27. For her part, Applicant claims that, regardless of the date that Paldemar S.A. was incorporated, Aniter S.A. and all of its assets (including Aniter S.A., Consultatio Real Estate Inc., Consultatio Key Biscayne LLC, Consultatio Bal Harbour LLC, and the interest that the two latter companies own in the US Projects) should be deemed as marital property given that all of the material steps involving the formation of the companies and the relevant investments were undertaken by Husband during the time of the marriage. See D'Auro Declaration ¶ 28.

28. Furthermore, Applicant maintains that the only reason why Husband claims that the stake he owns in the US Projects through Paldemar S.A. is not marital property is the *artificial* fact that Paldemar S.A. (a mere vehicle for personal investments) happens to have been formed/acquired before the marriage. Acknowledging that contention as being determinative of the asset's characterization as non-marital property would give a spouse the power to unilaterally

7

decide which asset should be marital property and which should not, thus, violating Argentine family law.  See D'Auro Declaration ¶ 29.

29.     The business entities from whom discovery is sought are not parties to the Argentine Proceeding and are not expected to become parties thereto.  See D'Auro Declaration ¶ 30.

30.     The Argentine authorities and tribunals would be receptive to the documentary and testimonial evidence sought through the instant Application.  The evidence sought through this Application is relevant, and will assist in the Argentine Proceeding, including in the Argentine tribunal's ruling with regards to the definition and distribution of marital property in the underlying case.  Furthermore, the Application and the gathering of the requested evidence in this District do not circumvent any proof-gathering restriction under Argentine law.  See D'Auro Declaration ¶ 31.

31.     Finally, the discovery requests sought to be served on the Florida business entities are not intrusive or unduly burdensome.  The Applicant seeks documentary and testimonial evidence believed to be in the possession, custody or control of the discovery targets.  This evidence is of the type that the business entities regularly retrieve and produce as third parties or actual parties in litigation.  Furthermore, the Applicant limits her requests to the period beginning with January 1, 2008 to the present.  See D'Auro Declaration ¶ 32.

32.     As demonstrated below, the Applicant meets the mandatory requirements and discretionary factors for granting this relief under § 1782.

## ARGUMENT

### I.     Standard for Granting Judicial Assistance Pursuant to § 1782

28 U.S.C. § 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court … The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28. U.S.C. § 1782(a).

28 U.S.C. § 1782(a) provides that district courts may order persons found or residing within their district "to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-48 (2004); see Lo Ka Chun v. Lo To, 858 F.2d 1564 (11th Cir. 1988) ("The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance."). Congress intended § 1782 to build goodwill by accommodating the needs of foreign courts and litigants, and "purposefully engineered" the statute as "as one-way street" to "grant wide assistance to others, but demand[ing] nothing in return." Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995). Congress intentionally granted the district courts broad discretion in granting judicial assistance under § 1782. In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001).  A district court should consider a § 1782 request in light of the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by

9

example to provide similar means of assistance to our courts." Euromepa, S.A., 51 F.3d at 1097 (citing In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992)).

A district court has authority to grant an application for judicial assistance pursuant to § 1782 if the following statutory requirements are met: (1) the person from whom discovery is sought must reside and be found in the district of the district court; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing;" (3) the request must be made "by a foreign or international tribunal," or by "any interested person;" and (4) the evidence must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); see In re Clerici, 481 F.3d at 1331-32. If these requirements are met, then § 1782 "authorizes, but does not require a federal district court to provide assistance." Intel, 542 U.S. at 255. The Supreme Court has cautioned lower courts against reading any additional requirements into the statute's application. See Intel, 542 U.S. at 255 (advising lower courts to resist placing additional "categorical limitations … on the statute's reach."); see also In re Aldunate, 3 F.3d 54, 59 (2d Cir. 1993) ("[W]e are not free to read extra-statutory barriers to discovery into section 1782.").[6]

Next, once a District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. To aid that discretion, the Intel Court delineated the following four factors: (1) whether "the person from whom discovery is

---

[6] District courts may, and indeed typically do, grant § 1782 on an *ex parte* basis. See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A., 747 F.3d 1262, 1267 (11th Cir. 2014); In re Clerici, 481 F.3d 1324, 1329-30 (11th Cir. 2007); see also Gushlak v. Gushlak, 486 Fed.Appx. 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing further authority therein) (summary order).

sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65; Clerici, 481 F.3d at 1334 (reciting factors).[7]

## II. Applicant Meets the Mandatory Requirements for Granting Relief

### A. The Florida companies from whom Discovery is Sought Reside or are Found in this District

As demonstrated below, the four business entities from whom discovery is sought "reside" or are "found" in this District, thus satisfying the first requirement of 28 U.S.C. § 1782.

A legal entity "resides or is found in" a district, pursuant to § 1782, when it has engaged in systematic and continuous activity in the district. Godfrey, 526 F.Supp.2d 417, 422.[8] The maintenance of an office in the district is indicia that a legal entity "resides or is found in" a district.

---

[7] The Court's discretionary analysis should be guided by the twin congressional policy aims of § 1782. Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 81 (2d Cir. 2012) ("District courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.") (internal citations omitted); see also Intel 542 U.S. at 252 (rejecting additional requirements to granting relief as they "would disserve § 1782's twin aims").

[8] Additionally, Professor Hans Smit, drafter of § 1782, has commented: "Insofar as the term ['found'] applies to legal rather than natural persons, it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." Hans Smit, American Assistance to Litigation in Foreign and Int'l Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 10 (Spring 1998); see In re Godfrey, 526 F.Supp.2d at 422 (citing to Professor Smit).

11

Consorcio Ecuatoriano, 747 F.3d 1262, 1269 (11th Cir. 2014). Consultatio Real Estate Inc., Consultatio Key Biscayne LLC, Consultatio Bal Harbour LLC and Paldemar Realty Corp. maintain offices in the district, do business in this district and have engaged in systematic and continuous activity here. See D'Auro Declaration ¶¶ 12, 15, 19, 20 and 22 and Exhbit 4 thereto.

Accordingly, the Applicant satisfies the first requirement under § 1782.

### B. The Discovery Sought is for use in a Proceeding in a Foreign Tribunal

Likewise, the Applicant satisfies the second requirement as the discovery sought through the instant application is for use in an Argentine divorce proceeding. See D'Auro Declaration ¶¶ 3, 4, 23, 24. The Argentine divorce proceeding is civil in nature, adjudicative, and imminent and will be heard by the Civil First Instance National Court of Argentina (known in Spanish as the Juzgado Nacional de Primeria Instancia en lo Civil). See D'Auro Declaration ¶ 23, fn. 3. Subject to the limitations set forth by the National Civil Procedure Code, the rulings of that court may be appealed to the Civil National Court of Appeals (Camara Nacional de Apelaciones en lo Civil) and, evenutally, to the National Supreme Court (Corte Suprema de Justicia de la Nacion). See D'Auro Declaration ¶ 23, fn. 4-5.

Initially, various courts recognized that family or matrimonial proceedings in foreign jurisdictions are "proceedings in a foreign or international tribunal" within the ambit of § 1782. See In re Application of Nascimento, 2014 WL 4457141 (S.D.N.Y. May 13, 2014); In re Gushlak, 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011), aff'd. Gushlak, 486 Fed.Appx. at 218.

Second, it is well settled that a § 1782 application may seek evidence for use in a proceeding that has not yet begun but that is within reasonable contemplation. Intel, 542 U.S. at 258-9; Consorcio Ecuatoriano, 747 F.3d at 1270. In Intel the Supreme Court noted, "[s]ection 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings.

12

In 1964… Congress also deleted the requirement that a proceeding be 'pending.' When Congress acts to amend a statute we presume it intends its amendment to have a *real and substantial effect*." Id. (internal citations omitted) (emphasis added); see also In re Letter of Request from Crown Prosecution Service of United Kingdom, 870 F.2d 686, 690-91 (D.C. Cir. 1989) ("none of [the cases] requir[e] that the proceeding be underway prior to the request for aid… we will not treat Congress' deletion of the word 'pending' as a mistake or mere accident.") (internal citations omitted); In re Wilhelm, 470 F.Supp.2d 409 (S.D.N.Y. 2007) (granting relief under § 1782 where a Dutch criminal proceeding was within reasonable contemplation, not pending or imminent).

Here, the Argentine Proceeding is within the Applicant's reasonable contemplation as the pre-action negotiations with her husband have failed making the divorce petition and filings imminent. See D'Auro Declaration ¶ 7. Addtionally, Applicant's husband announced his intention to divorce her and the marriage is now irretreivably broken. See D'Auro Delcaration ¶ 6. Accordingly, the contemplated Argentine Proceeding serves as a legitatimate basis for granting § 1782 relief through the instant Application.

    **C.**    **The Applicant is an Interested Person**

Finally, the Applicant is an interested persons in her capacity as putative petitioner and litigant in the Argentine Proceeding. See D'Auro Declaration, ¶ 4. A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance… qualifies as an interested person within any fair construction of that term." Intel, 542 U.S. at 256-7 (2d Cir. 2004) (internal citations omitted); RTI Ltd. v. Aldi Marine Ltd., 523 Fed.Appx. 750, 751-2 (2d Cir. 2013) (same) (summary order). A litigant in a foreign proceeding plainly falls within the definition of "interested person." See Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that interested person includes

a party to the foreign litigation.") (internal citations omitted). Here the contemplated and imminent divorce proceeding concerns the Applicant's marital status and disputed property rights. See D'Auro Declaration, ¶¶ 23-29. As such, the Applicant meets the third mandatory requirement.

### III. This Court Should Exercise its Discretion in Favor of Granting Relief

As noted above, once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. Consorcio Ecuatoriano at 1272.[9] Here, these discretionary factors weigh in favor of granting the requested relief.

First, the business entities from whom discovery is sought are not parties to the Argentine Proceeding and are not expected to become parties thereto. As such, the need for this evidence is more apparent and this factor weighs in granting the instant Application. Indeed, absent the instant Application, the evidence would almost certainly remain outside the reach of the Argentine tribunal. See D'Auro Declaration ¶ 30.

Second, Argentine counsel has advised the Applicant that there is no indication that the Argentine tribunal would not be receptive to the documentary and testimonial evidence sought through the instant Application. To the contrary, Argentine counsel has advised that the evidence sought through this Application is relevant, will assist the Argentine tribunal, and is relevant to the issues to be decided by the Argentine tribunal. See D'Auro Declaration ¶ 31.

---

[9] The four factors guiding that discretion again are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65; see also Consorcio Ecuatoriano, 747 F.3d at 1272.

Third, Argentine counsel has advised that the Application and the gathering of the requested evidence in this District do not circumvent any proof-gathering restriction under Argentine law. See D'Auro Declaration ¶ 31.

Finally, the discovery sought to be served on the business entities is not intrusive or unduly burdensome. The Applicant seeks documentary and testimonial evidence concerning the type of evidence that business entities regularly retrieve and produce as third parties or actual parties in litigation. Furthermore, Applicant limits their requests to the period beginning with January 1, 2008 to the present. See D'Auro Declaration ¶ 32.

As such, each discretionary factor identified by the Intel Court weighs in favor of granting the Application.

## IV.     The Florida Business Entities Should Preserve Relevant Evidence

To the extent that the requested evidence may be discarded or deleted, manually or automatically, the Florida business entities to be subpoenaed should be directed to preserve all potentially relevant evidence. See Telecton, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 127 (S.D. Fla. 1987) (noting that a litigant has "a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request"). Any issues that the Florida business entities may have with the proposed discovery can be addressed in response to the requested discovery. See, e.g., In re Clerici, 481 F.3d at 1329..

WHEREFORE, Applicant respectfully requests this Court to enter an Order, in the proposed or substantially similar form attached hereto as **Exhibit B**:

15

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this Application for Judicial Assistance;

(b) ordering that discovery taken pursuant to this Application and Order will be governed by the Federal Rules of Civil Procedure;

(c) granting Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve subpoenas on the four (4) identified discovery subjects located in this district for documents and testimony and regarding the subject matter described in this Application as well as any reasonable related or follow up discovery as may be required;

(d) ordering the preservation of relevant and potentially relevant documents in the possession, custody or control of the discovery subjects; and

(e) any other relief this Court deems just and proper.

Dated July 6, 2015

**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
1001 Brickell Bay Dr., 9th Floor
Miami, Florida  33131
Telephone: (305) 372-8282
Facsimile:  (305) 372-8202

By:   /s/ Arnoldo B. Lacayo
Arnoldo B. Lacayo
Florida Bar No. 675482
alacayo@astidavis.com